## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDDIE MENDIA,

                    Plaintiff,


          vs.                                    Case No. 06-1212-JTM


HAWKER BEECHCRAFT
CORPORATION,

                    Defendant.


## MEMORANDUM AND ORDER

Presently before the court is defendant Hawker Beechcraft Corporation's (Hawker)

motion for summary judgment (Dkt. No. 51).  Plaintiff Eddie Mendia (Mendia) filed a pro se

complaint against his former employer alleging claims pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 621 *et seq.*, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101,

*et seq.*.  Mendia also alleges a common law cause of action for intentional infliction of emotional

distress.  For the reasons stated below, the court grants Hawker's motion.

### I.  Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact, and that the moving party is entitled to judgment as a

matter of law.  Fed.R.Civ.P. 56(c).  An issue is "genuine" if "there is sufficient evidence on each

1

side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.*  In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.  *Baker v. Bd. of Regents*, 991 F.2d 628, 630 (10th Cir. 1993).  The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate* Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).  The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations.  *Anderson*, 477 U.S. at 256.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1).

## II. Facts

The court makes the following findings of fact.  Excluded from these findings are allegations of fact which are not supported by the cited evidence, which are grounded on hearsay or other inadmissible evidence, or which reflect an unexplained and unjustified contradiction of earlier deposition testimony. *See Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986).

Mendia, who is of Mexican ancestry, worked for Hawker from June 8, 1987 to May 11, 2005, when he was involuntarily terminated due to violations of Hawker's attendance policy.  At the time of his termination, Mendia was an Avionics Technician for Hawker, which is a manufacturer of aircraft for general aviation and military use.  Mendia is currently fifty-nine years old, and claims that an alleged lightning strike in 1995 rendered him disabled in that he is often confused and has memory loss.  Additionally, Mendia claims that he is further disabled due to a neck injury that occurred in November 2004.

Hawker's attendance policy, which it furnished to its employees, provided that an unexcused absence of one hour or less would result in one infraction, an unexcused absence between one and four hours would result in two infractions, an unexcused absence of more than four hours would result in four infractions, and a full day absence where proper notification was not provided to the company would result in four infractions.  An employee who incurred four infractions within a 180-day period would receive a Step 1 written remand, and a Step 2 written remand would follow if that employee incurred four more infractions in a 180-day period within one year of receiving the first written remand.  Step 3, which is termination of employment, would result if an employee incurred four additional infractions in a 180-day period within one

year following receipt of a Step 2 written remand, or if an employee was absent for five or more

consecutive working days without a valid reason.  Further, termination could occur if an

employee failed to properly notify the company of their absence for three consecutive working

days, or if the employee failed to properly notify the company of their absence on three non-

consecutive working days in a rolling twelve-month period.

Mendia was involved in an automobile accident on November 16, 2004, when his car was

rear-ended at a stoplight.  Mendia was not hospitalized as a result of the accident, was not treated

at the scene, and was not transported by ambulance to the emergency room.  Nevertheless, the

following day, Mendia did seek treatment for neck pain from his personal physician, Dr.

Matthew Johnson, who prescribed pain medication and physical therapy.  After the accident,

Mendia requested and received FMLA leave from Hawker until February 15, 2005.  After the

exhaustion of all the available FMLA leave, Hawker permitted Mendia to continue on an unpaid

medical leave of absence until February 28, 2005.  On February 21, 2005, Dr. Johnson released

Mendia to return to work, with the following restrictions: (1) no overtime for one month; (2) no

more than eight hours per day spent in climbing, kneeling, crawling, stooping, crouching,

standing, lifting and carrying, pushing, pulling, or working in high places.   Hawker complied

with all of those restrictions when Mendia returned to work on February 28, 2005.

Mendia claims that he re-injured his neck while at home on Thursday, April 28, 2005.  He

went to Dr. Johnson that same day, and the doctor released him to return to work on May 2,

2005, with the "no overtime" restriction in place for thirty days.  Due to the purported neck

injury, Mendia was absent from work on Thursday April 28 and Friday April 29, 2005, yet had

no available sick leave.  In accordance with Hawker's attendance policy outlined above, Mendia

received attendance infractions for each date, which resulted in a Step 1 written warning. Further, Mendia was absent from work on Monday, May 2 and Tuesday, May 3, 2005, which resulted in a total of four attendance infractions and thus a Step 2 written warning. On May 4, 2005, Mendia's Team Leader, Wade Simmons, called him at home to let him know that he was at a Step 2. Mendia did not report to work on that day either, and thus received two additional infractions.

Prior to being informed that he had reached a Step 2 written warning, Mendia did bring a letter to Hawker from chiropractor Blake Betty on May 2, 2005, stating that Mendia was being treated for muscle spasms in his lower back; nevertheless, the nurse at Hawker who manages the Occupational Health Services Department informed plaintiff that he was unsure whether the company doctor would accept the excuse from Mendia's chiropractor. Later, Mendia brought in a prescription pad signed by Dr. Johnson, stating, "Please excuse this patient from work 5-2-05 to 5-6-05. May return 5-9-05." Unlike prior Medical Information Authorization forms completed by Dr. Johnson, the note written on a prescription pad did not state (1) that Dr. Johnson had actually seen Mendia; (2) the nature of the condition causing the absence; (3) the treatment being provided; or (4) any limitations that might apply.

Mendia further failed to attend work on Thursday, May 5, 2005, which caused him to incur two additional attendance infractions, giving him a total of twelve infractions in a 180-day period, which would call for termination under Hawker's attendance policy. Mendia reported to work for a few hours on Friday, May 6, 2005, where Hawker was finally able to issue him the Step 1 and Step 2 written warnings he had incurred over the previous days.

On May 10, 2005, the Occupational Health Services department notified Labor Relations that Hawker's company doctor had reviewed the documentation provided by Mendia and concluded that there were no objective findings identified in the medical records that supported an absence from his required employment responsibilities. Accordingly, on that day, plaintiff was given a Step 3, which is termination of employment.

During his employment with Hawker, Mendia never made a complaint to the Human Resources department. Subsequent to his termination, however, Mendia filed a complaint with both the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC) on November 7, 2005. In those actions, Mendia alleged that he heard non-supervisory co-workers make unspecified racial remarks, that he heard his supervisor, Wade Simmons, say on more than one occasion, "Eddie plays the system."

## III.  Analysis

*A. Timeliness*

Hawker claims that it is entitled to summary judgment on portions of Mendia's Title VII, ADEA, and ADA claims because Mendia did not include a claim on discrimination in his administrative complaint, and because he did not timely file his administrative complaint. Mendia failed to address any of Hawker's assertions regarding this issue.

Claims pursuant to Title VII, the ADEA, and the ADA require the timely filing of an administrative complaint with the EEOC within 300 days of the challenged discriminatory action. *Haynes v. Level 3 Commc'ns,* 456 F.3d 1215, 1222 (10th Cir. 2006). The Tenth Circuit has noted that a "plaintiff may not bring a lawsuit based upon claims that were not part of a timely-filed EEOC charge." *Barzanji v. Sealy Mattress Mfg. Co.,* 6 Fed. Appx. 720, 722 (10th

6

Cir. 2001).  Mendia filed his EEOC charge on November 7, 2005; therefore, the discriminatory

action on which he bases his claims must have occurred on or after January 11, 2005.  42 U.S.C.

§ § 12117(a); 2000e-5; *Duncan v. Manager, Dep't. of Safety, City & County of Denver*, 397 F.3d

1300, 1308 (10th Cir. 2005) (Title VII); *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1183

(10th Cir. 2003) (ADA); *Beard v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998)

(ADEA).

 Generally, a cause of action accrues "on the date the employee is notified of an adverse

employment decision by the employer." *Davidson*, 337 F.3d at 1187.  In determining when a

cause of action accrues, the focus is on the discriminatory act and not the point in time when the

consequences of the act become painful. *See Chardon v. Fernandez*, 454  U.S. 6, 8 (1981).  A

party, therefore, must file a charge within 300 days of the date of the discrete discriminatory act,

or lose the ability to recover for it, regardless of whether the time-barred acts are closely related

to acts alleged in a timely filed charge.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

113 (2002).

 In this case, Mendia complains of several discreet acts of alleged racial discrimination or

harassment, each of which took place long before January 11, 2005.  Because Mendia did not file

a timely administrative complaint concerning these alleged instances of discrimination, Hawker

is entitled to summary judgment on the portion of Mendia's Title VII, ADEA, and ADA claims

due to inadequate exhaustion of administrative remedies.

 Due to the lenient standard given to pro se plaintiffs, this court will still address Mendia's

claims on the merits.  Nonetheless, even if Mendia had timely filed his complaint with the

EEOC, this court would still grant summary judgment to Hawker on all claims for the reasons set forth below.

## B.  Age Discrimination

The ADEA provides that "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1). "Employers are to evaluate [older] employees . . . on their merits and not their age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (quoting *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422 (1985)). "The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." *Id.* at 611.

To prevail in an ADEA claim, plaintiff "must establish that age was a determining factor in the employer's challenged decision." *Lucas v. Dover*, 857 F.2d 1397, 1400 (10th Cir. 1988) (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988)). The plaintiff "need not prove that age was the sole reason for the employer's acts, but must show that age made the difference in the employer's decision." *Sperry Corp.*, 852 F.2d at 507 (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985)).

Except in cases involving direct evidence of discrimination, age discrimination claims are to be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Marx v. Schnuck Markets, Inc.* 76 F.3d 324, 327 (10th Cir. 1996).  Under the burden-shifting of *McDonnell Douglas*, the plaintiff must initially establish a prima facie case of discriminatory discharge.  Then, defendant must offer a legitimate, nondiscriminatory reason

for its employment decisions. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the defendant does so, then the burden reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual i.e., unworthy of belief." *Marx*, 76 F.3d at 327.

To establish a prima facie case of age discrimination, the plaintiff must prove: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) he was replaced with a younger person. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). Although Mendia was in the protected age group and terminated, it is unlikely that he can prove that he was doing satisfactory work, or that he was replaced with a younger person. The facts are clear that Mendia did not comply with Hawker's attendance policy; he was absent from work, without the proper excuse, and thus did not do any work at all, much less satisfactory work, for extended periods. Further, Mendia never sought to prove whether he was replaced with a younger person. Accordingly, Mendia cannot meet his burden to prove the prima facie case of age discrimination

Even if Mendia could meet his burden, Hawker has offered a legitimate, nondiscriminatory reason for its employment decision, namely that Mendia failed to comply with its clearly stated attendance policy. Therefore, the burden reverts back to Mendia to show that Hawker's reason was pretextual, by proving either that "a discriminatory reason more likely motivated the employer . . . or that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001). Mendia cannot meet his burden; there is absolutely nothing in the record to indicate that Mendia was terminated due to his age.

Mendia's basis for this age discrimination claim does not appear to be that he was denied promotion or terminated due to his age, but instead that he was subject to the following age-based comments: (1) during the grievance procedure which followed plaintiff's termination, Dan Dymarkowski, Director of Labor Relations, indicated that, because of plaintiff's age, he could be entitled to some benefits; (2) prior to the time that Wade Simmons became a supervisor, plaintiff overheard Simmons say to another employee, "An old fart like you, how do you keep hanging on? You must be retiring soon"; (3) in mid 2004, when plaintiff was considering taking a crew chief position on third shift, Wade Simmons said, "But at your age, do you think you could handle all of the overtime that's going to be required?"; (4) in mid 2004, Wade Simmons said, "At your age, wouldn't you rather being doing something more satisfying?"

First, several of those statements, including the remark about benefits, are not discriminatory, and instead were probably intended to be helpful to Mendia.  Second, the Tenth Circuit has repeatedly noted that age-based remarks by non-decision makers cannot form the basis of a hostile work environment claim.  *See, e.g.*, *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir.2007) (applying the same logic of establishing a hostile work environment to race discrimination); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.2005) (holding two racially offensive remarks "fall far short of the 'steady barrage' required for a hostile environment claim"); *see also Elkins v. Bayer Construction Co.*, 68 F. Supp. 2d 1249, 1259 (D. Kan. 1999) (referring to an employee as "old fart" was insufficient to state a claim under the ADEA).  Most of the remarks Mendia has complained about were not from direct supervisors. Further, the mere fact that age was mentioned is not evidence of discrimination.  Quite simply,

the remarks in question do not rise to the level necessary to establish that Hawker's proffered reason was pretextual. Accordingly, Mendia's age discrimination claim cannot survive summary judgment.

## C.   Race Discrimination and Racial Harassment

### 1.   Discrimination

The *McDonnell Douglas* burden-shifting framework described above also applies in race-discrimination cases where there is no direct evidence of race discrimination. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). The plaintiff in the race discrimination case bears the initial burden of setting forth a prima facie case of discrimination by proving that: "(1) plaintiff belongs to a protected class; (2) plaintiff was qualified for his position; (3) plaintiff was discharged despite his qualifications; and (4) the position was not eliminated after plaintiff's discharge." *Malik v. Amini's Billiard & Bar Stools, Inc.*, 454 F. Supp. 2d 1106, 1112 (D. Kan. 2006) (citing *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)). If plaintiff can show those elements, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the defendant makes such a showing, the burden reverts back to the plaintiff to show the proffered reason is pretextual. *Id.*

Hawker does not dispute that Mendia is a member of a protected class by virtue of his Mexican ancestry, but does dispute, however, that Mendia was satisfactorily performing his job because of his extended absences in excess of the available FMLA leave. Hawker's argument cannot stop Mendia from establishing his prima facie case; however, because in accordance with

11

established Tenth Circuit precedent, the district court should decline to "analyze an employer's assessment of the plaintiff's performance at the prima facie stage where the employer also asserts that the plaintiff's alleged deficient performance was the employer's legitimate, nondiscriminatory reason for taking the adverse employment action." *Day v. Kraft Foods N. Am., Inc.*, 490 F. Supp. 2d 1148, 1155 (D. Kan. 2007). Accordingly, Hawker's claim that Mendia was not satisfactorily performing his job will not be sufficient to preclude Mendia from establishing a prima facie case. Thus, Mendia has met his burden to prove the prima facie case by showing that he was seemingly qualified for his position, was discharged, and replaced.

Because Mendia established a prima facie case, the burden reverts to Hawker to articulate a legitimate non-discriminatory reason for the employment action. In this case, Hawker easily meets this standard; it has repeatedly asserted that Mendia's employment was terminated due to his extended absences.

Thus, the burden reverts back to Mendia to show that Hawker's proffered reason is pretextual. To establish pretext, Mendia must show either that "a discriminatory reason more likely motivated the employer . . . or that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001). Mendia does not dispute that he was absent on the days that lead to his termination, and fails to demonstrate that any other employee was treated more leniently under the attendance policy. Further, Mendia offers no evidence for pretext, other than vague references to differing treatment given to non-minorities. Mendia's claims, however, are not enough to support a finding of pretext, and thus he cannot meet his burden necessary to

survive summary judgment.  Accordingly,  Hawker's decision to terminate Mendia's employment was proper and does not constitute race discrimination.

2.  Harassment

Although Mendia presently asserts a claim for racial harassment, his administrative complaint is totally devoid of any such claim and thus Hawker is entitled to summary judgment due to Mendia's failure to exhaust administrative remedies.  Even if Mendia had properly preserved the claim, however, Hawker would still be entitled to summary judgment on the merits.

Mendia alleges that he was subjected to racial harassment by generally claiming that he heard non-supervisory co-workers make unspecified racial remarks, including the seemingly racially benign statement by his supervisor, Wade Simmons, that "Eddie plays the system."

To survive summary judgment on a racial harassment claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *McCowan v. All Star Maint.*, 273 F.3d 917, 923 (10th Cir. 2001) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)).  When evaluating whether the alleged harassment is severe, the court looks at the all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  The court employs both object and subjective analysis when

considering the work environment, and considers all circumstances from the perspective of a "reasonable person in the plaintiff's position." *McCowan*, 273 F.3d at 923.

Based on these standards, Mendia failed to establish the existence of a racially hostile work environment. His grievances are nothing more than racially benign comments that are not "hallmarks of hostile work environment claims." *Trujillo*, 157 F.3d at 1214. Further, the record is devoid of evidence which would support an inference that any of the conduct about which Mendia complains stemmed from racial animus. Instead, the record shows that Mendia was terminated in compliance with Hawker's clearly established, and equally applied, absence policy. The isolated statements from some people in the company that are not racially charged are insufficient to support a claim for racial harassment, and thus summary judgment is granted on this claim as well.

## D.  Americans with Disabilities Act

### 1.  Disability Discrimination

The Americans with Disabilities Act (ADA) prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA further defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. 12102(2).

Absent direct evidence of discrimination, a claim brought pursuant to the ADA is subject to the same burden shifting approach borrowed from *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003); *Butler*

*v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999).  Under this approach, the

plaintiff carries the initial burden of establishing a prima facie case by a preponderance of the

evidence.  *See McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff fails to prove any element of

his prima facie case, then summary judgment is proper.  *Burnett v. Pizza Hut of Am., Inc.*, 92 F.

Supp. 2d 1142, 1153 (D. Kan. 2000).  If, however, a plaintiff can prove a prima facie case of

discrimination, then defendant must produce evidence of a legitimate, nondiscriminatory reason

for the challenged employment decision.  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir.

1997). If defendant satisfies this burden, then plaintiff must introduce evidence "that the

employer's proffered reason for the challenged [employment] action was pretextual – i.e.,

unworthy of belief." *Id*. (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

To establish a prima facie case of discrimination under the ADA, the plaintiff must

demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a "qualified

individual" meaning that he is "able to perform the essential functions of the job, with or without

reasonable accommodation;" and (3) the employer terminated or took adverse employment action

against the plaintiff because of his disability.  *See MacKenzie v. City & County of Denver*, 414

F.3d 1266, 1274 (10th Cir. 2005); *Morgan*, 108 F.3d at 1323.

The first element of Mendia's prima facie case concerns the court; the impairments that

Mendia asserts do not qualify as disabilities under the ADA.  The ADA defines "disability" as

"(A) a physical or mental impairment that substantially limits one or more of the major life

activities of such individual; (B) a record of such impairment; or (C) being regarded as having

such an impairment."  42 U.S.C. 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999).

Determining whether a disability exists is "an individualized inquiry." *Sutton*, 527 U.S. at 472. However, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002).

In this case, Mendia claims that he is actually disabled by the soft tissue neck injury to his neck resulting from an automobile accident in November 2004, and by memory loss and confusion resulting from an alleged lightning strike in 1995. In its motion for summary judgment, Hawker contends that Mendia cannot establish a prima facie case, because he does not have an actual disability. Courts generally employ a three-step process to determine whether an individual is disabled under the "actual disability" prong: (1) determine whether the plaintiff suffers from a physical or mental impairment; (2) identify the life activity affected by the impairment and determine whether it constitutes a major life activity under the ADA; (3) determine whether the impairment substantially limited the major life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Poindexter v. Atchison, Topeka & Sante Fe Railway Co.*, 168 F.3d 1228, 1230 (10th Cir. 1999).

Hawker does not dispute that Mendia was in an automobile accident on November 16, 2004. Hawker does dispute, however, that this injury gives rise to a disability classification under the ADA. Following the accident, Mendia was off work from November 16, 2004 until February 25, 2005. When he returned to work, Mendia's only restrictions were that he should not work overtime, and that he should spend no more than eight hours per day performing certain movements. Hawker complied with those restrictions, and Mendia was able to return to work. Thus, that accident did not render Mendia disabled.

Hawker does dispute Mendia's alleged lightning strike disability, partly because it was

16

never corroborated by any medical diagnosis.  Further, by Mendia's own admission, he was able

to overcome the memory problems associated with his alleged lightning strike by taking notes

and performing his job accordingly.  The courts in this circuit have held on several occasions that

far more severe and intransigent conditions do not rise to the level of a disability, as that term is

defined by the ADA. *See, e.g., Berry v. T-Mobile U.S.A., Inc*., 490 F.3d 1211 (10th Cir. 2007)

(multiple sclerosis which affected plaintiff's ability to care for herself and perform household

tasks not a disability)*; Holt v. Grand Lake Mental Health Center, Inc.*, 443 F.3d 762 (10th Cir.

2006) (cerebral palsy that limited caring for herself, performing manual tasks not a disability).

Nevertheless, even if Mendia's neck injury and lightning strike constitute a physical or mental

impairment, he cannot survive summary judgment, because he cannot prove that the impairment

substantially limits a major life activity.

Assuming without deciding that working should qualify as a major life activity, Mendia

has not shown that his limitations prohibit him from completing his job or that he is unable to

perform any of the life activities completely.  Mendia has failed to show that he is unable to

work, and instead has merely shown that he had minor restrictions upon returning from his

medical leave after the accident.  Further, by Mendia's own admission, his alleged lightning

strike encounter renders his memory faulty, a condition he is able to overcome through the use of

note-taking.  Accordingly, Mendia has not demonstrated an impairment to a major life activity

and thus has failed to establish the first prong of his prima facie case, that he is a disabled person under the ADA.  As such, summary judgment in favor of the defendant is proper on Mendia's ADA claim.

### 2.  Disability Harassment

Mendia also seemingly asserts a claim for disability harassment, contending, among other things,  that Denny Britt called him "Lightning" in 1995, and that Wade Simmons asked him if it was "Lightning" in the summer of 2004.  As with prior claims, Mendia failed to properly exhaust his administrative remedies, and thus his claim for disability harassment should be dismissed based on that procedural ground.  Even if Mendia's claim was properly preserved, however, it would still not survive summary judgment on the merits.  Due to Mendia's pro se status, the court will briefly examine the merits of Mendia's claims.

The Tenth Circuit has held that hostile work environment claims are actionable under the ADA.  *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004).  To succeed on a claim for hostile work environment, however, a plaintiff must prove "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Anthony v. City of Clinton,* 185 F.3d 873, 873 (10th Cir. 1999).  In this case, there were allegedly a handful of comments that occurred over a long period of time.  There was no severe and pervasive intimidation, ridicule or insult directed toward Mendia.  Accordingly, Mendia cannot survive summary judgment on this claim.

### E. Intentional Infliction of Emotional Distress

Mendia claims that the he is entitled to relief due to intentional infliction of emotional

18

distress because of the manner in which his employment was terminated, and because of Hawker's refusal to accept a doctor's note.  To establish a claim of intentional infliction of emotional distress under Kansas law, a plaintiff must establish four elements: (1) intentional conduct of the defendant, or conduct by the defendant that was in reckless disregard of the plaintiff; (2) extreme and outrageous conduct; (3) a causal connection between defendant's conduct and plaintiff's mental distress; and (4) extreme and severe mental distress on behalf of the plaintiff.  *Caputo v. Prof'l Recovery Servs. Inc.*, 261 F. Supp. 2d 1249, 1265 (D. Kan. 2003) (*citing Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257, 978 P.2d 922 (1999)).  Conduct is extreme and outrageous if a "civilized society would regard it as exceeding the bounds of decency or utterly intolerable." *Id.*  "The classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously claim, Outrageous!" *Mai v. Williams Indus., Inc.*, 899 F. Supp. 536, 542 (D. Kan. 1995).  Based on these standards, Mendia's claim must fail.

By Mendia's own admission, the meeting at which his termination occurred was "straight cordial, and formal."  (Dkt. No. 51, Exhibit 5 [Mendia Deposition]).  Nothing at all indicates that it was egregious; instead, Hawker followed company guidelines and then promptly informed Mendia when his employment was terminated.  Additionally, courts have noted that mere termination of employment cannot be the basis for an intentional infliction of emotional distress claim.  *See e.g., Allen v. Miami County Emergency Med. Serv.*, No. 95-1149, 1997 WL 624864, at *12 (D. Kan. Sept. 15, 1997); *Fletcher v. Wesley Med. Ctr.*, 585 F. Supp. 1260, 1262 (D. Kan. 1984).  Further, there is no evidence that the calls to Mendia's home were anything more than

courtesy calls and warnings to avoid termination, rather than outrageous conduct.  Accordingly, a claim for intentional infliction of emotional distress cannot stand.

In sum, Mendia was discharged for failing to maintain satisfactory attendance, which is a legitimate and nondiscriminatory reason.  Although Mendia is clearly dissatisfied with the decision to terminate his employment, his proffered evidence is not sufficient to sustain any of his purported claims.  As such, his claims cannot stand, and Hawker is entitled to summary judgment on all claims.

IT IS THEREFORE ORDERED this 17th day of January, 2008, that the court grants defendant's motion for summary judgment (Dkt. No. 51).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE